[Cite as *State v. Sergent*, 2019-Ohio-4717.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 13-19-20

    v.

JEFFREY R. SERGENT, II,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 18 CR 0267

Judgment Affirmed

Date of Decision: November 18, 2019

APPEARANCES:

    *Brian A. Smith* for Appellant

    *Angela M. Boes* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Jeffery R. Sergent, ("Sergent"), appeals the June 4, 2019 Judgment Entry of Sentence issued by the Seneca County Common Pleas Court journalizing his conviction for one count of Assault on a Peace Officer and one count of Resisting Arrest, and sentencing him to serve sixteen months in prison. On appeal, Sergent claims that the prosecutor failed to bring him to trial within the appropriate timeframe set forth in R.C. 2945.71(C)(2),(E), and that his trial counsel was ineffective for failing to file a motion to dismiss on speedy trial grounds. Sergent also claims that his conviction for Assault on a Peace Officer is against the manifest weight of the evidence.

*Relevant Facts*

{¶2} On November 22, 2018, Thanksgiving Day, Sergent's adult stepson contacted local law enforcement to disclose Sergent's location at a residence in Bloomville, Seneca County, Ohio. The record indicates that Sergent was wanted on an active warrant issued in the State of Tennessee. Sheriff's Deputies Mark Lawson and Keegan Walter arrived at the residence to execute the Tennessee warrant for Sergent's arrest. The deputies were let into the home by Sergent's stepson and were given permission to kick down the locked door to the bedroom where Sergent was resting. Sergent attempted to flee upon encountering the Deputies. Deputy Lawson deployed his taser with one prong lodging in Sergent's

chest and the other hitting the bedroom wall. Sergent pulled out the taser prong and fled from the residence on foot.

{¶3} Deputy Walter and Sergent's stepson ran after Sergent a short distance until Sergent tired. Sergent refused to comply with Deputy Walter's commands to surrender. Deputy Walter tackled Sergent onto his back and a struggle ensued. Sergent was alleged to have struck Deputy Walter with a closed fist and to have attempted to gain control over Deputy Walter's firearm during the altercation. Shortly thereafter, other law enforcement officers arrived on the scene. Sergent was eventually subdued and placed under arrest.

*Procedural History*

{¶4} On December 3, 2018, the Seneca County Sheriff's Office filed a complaint against Sergent alleging that he committed the offense of Aggravated Robbery, in violation of R.C. 2911.01(B)(1), a felony of the first degree; Assault on a Peace Officer, in violation 2903.13(C)(5), a felony of the fourth degree; and Resisting Arrest, in violation of R.C. 2921.33(B), a misdemeanor of the first degree. The case was bound over to the Seneca County Court of Common Pleas after a preliminary hearing in the Tiffin-Fostoria Municipal Court.

{¶5} On December 19, 2018, Sergent was formally indicted on the charges by the Seneca County Grand Jury. Sergent appeared for arraignment. The trial court noted in its January 16, 2019 judgment entry that "[t]he defendant waived all of defendant's rights, excluding the waiver of trial by jury and the right to a speedy

trial, and entered a plea of not guilty to the charges in the indictment, to all of which the Court accepted." (Doc. No 14).

{¶6} The case proceeded to a two-day jury trial on June 3, 2019. The State presented the testimony of Deputies Lawson and Walter. Sergent presented the testimony of his stepson, Peter Maier. Sergent also testified on his own behalf. The jury returned a verdict of not guilty on the Aggravated Robbery charge and verdicts of guilty on the Assault on Peace Officer and Resisting Arrest charges.[1]

{¶7} On June 4, 2019, the trial court issued a judgment entry sentencing Sergent to a sixteen-month prison term on his Assault on a Peace officer conviction and to 150 days of local jail time for his Resisting Arrest conviction, to be served concurrently. The trial court also granted Sergent 195 days of jail time credit.

{¶8} It is from this judgment entry that Sergent now appeals, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**BECAUSE APPELLANT WAS NOT BROUGHT TO TRIAL WITHIN THE STATUTORILY REQUIRED TIME ENUMERATED IN R.C. 2945.71(C)(2), THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO A SPEEDY TRIAL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

---

[1] The jury also made the additional finding that Deputy Walter was a peace officer in the performance of his official duties at the time he and Sergent had the physical altercation.

**ASSIGNMENT OF ERROR NO. 2**

**BECAUSE APPELLANT'S TRIAL COUNSEL FAILED TO FILE A MOTION TO DISMISS, ON SPEEDY TRIAL GROUNDS, AT OR PRIOR TO THE COMMENCEMENT OF APPELLANT'S TRIAL, THE PERFORMANCE OF APPELLANT'S TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.**

**ASSIGNMENT OF ERROR NO. 3**

**BECAUSE THE JURY LOST ITS WAY AND CREATED A MANIFEST MISCARRIAGE OF JUSTICE IN FINDING APPELLANT GUILTY OF ASSAULT ON A PEACE OFFICER, APPELLANT'S CONVICTION FOR ASSAULT ON A PEACE OFFICER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*First Assignment of Error*

{¶9} In his first assignment of error, Sergent argues that his right to a speedy trial was violated because he was not brought to trial within the timeframe prescribed by R.C. 2945.71(C)(2),(E).

*Legal Authority*

{¶10} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution. *State v. Crawford*, 6th Dist. Lucas No. L-17-1296, 2019-Ohio-3123, ¶ 17, citing *State v. Adams*, 43 Ohio St.3d 67, 68 (1989). The Ohio legislature adopted the provisions of R.C. 2945.71 et seq. to implement these constitutional guarantees. *Adams*, *supra*. Under this statutory scheme, the State is required to bring a defendant charged with a felony to trial within 270 days after his arrest. R.C.

2945.71(C)(2). If an accused is in jail in lieu of bail *solely* on the pending charge, each day counts as three days for purposes of the speedy-trial calculation. R.C. 2945.71(E). Thus, a continuously incarcerated defendant, assuming no tolling has occurred and the triple count provision is applicable, must be brought to trial within 90 days of his arrest.

{¶11} Once the statutory time limit has expired, the defendant has established a *prima facie* case for dismissal. At that point, the burden shifts to the State to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. If the state fails to do so, the trial court is required to dismiss the charges against the defendant. R.C. 2945.73(B).

*Discussion*

{¶12} On appeal, Sergent claims that his right to a speedy trial was violated because he was being held solely on the charges in the case *sub judice*, and therefore he was entitled to the triple-count provision enumerated under R.C. 2945.71(E), bringing his speedy trial time to 90 days. The record indicates that Sergent was given jail time credit for 195 days in this case and Sergent does not claim the 270 day speedy trial timeframe had expired. Rather, Sergent's argument on appeal with respect to his speedy trial rights is based only upon his contention that the statutory triple-count provision applies.

{¶13} The record indicates Sergent failed to file a motion to be discharged for lack of speedy trial. R.C. 2945.73(B) specifies that "[u]pon motion *made at or*

-6-

*prior to the commencement of trial*, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." (emphasis added). This provision has been construed as statutorily requiring a defendant to raise the issue by motion prior to or at the commencement of trial. R.C. 2945.73(B). *See e.g.*, *State v. Crawford*, 6th Dist. Lucas No. L-17-1296, 2019-Ohio-3123, ¶ 21; *State v. Ballard*, 7th Dist. Columbiana No. 08 CO 13, 2009-Ohio-5472, ¶ 16; *State v. Flowers*, 2d Dist. Montgomery No. 22751, 2009-Ohio-1945, ¶ 29.

{¶14} On this basis, numerous courts, including the Supreme Court of Ohio have held that the issue of speedy trial cannot be raised for the first time on appeal and that the failure to file an appropriately timed motion on speedy trial grounds constitutes a waiver of the issue. *State v. Taylor*, 98 Ohio St. 3d 27, 33, 2002-Ohio-7017, ¶ 37 (stating that "appellant's failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal"), citing *State v. Thompson*, 97 Ohio App.3d 183, 186-87 (1994); *State v. Paige*, 7th Dist. Mahoning No. 7 MA 0033, 2019-Ohio-1088, ¶ 68; *State v. Wilson*, 11th Dist. Trumbull No. 2015-T-0082, 2017-Ohio-502, ¶ 42; *State v. Agostini*, 12th Dist. Warren Nos. CA2016-02-013, CA2016-02-014, 2017-Ohio-4042, ¶ 58.

{¶15} However, in some cases courts have elected to address the failure to file such a motion under the plain error doctrine. *City of Cleveland v. Dancy*, 8th

Dist. Cuyahoga No. 107241, 2019-Ohio-2433, ¶ 11; *State v. Simms*, 10th Dist. Franklin Nos. 05AP-806 and 05AP-807, 2006-Ohio-2960; *State v. Burgess*, 11th Dist. Lake No. 2003-L-069, 2004-Ohio-4395 (trial counsel's failure to object waived review of the speedy trial claim absent plain error); *State v. Griffin*, 9th Dist. Medina No. 2440-M (Dec. 20, 1995). *But see*, *State v. Turner*, 5th Dist. Licking No. 05CA108, 2006-Ohio-3786, ¶ 22 (stating "the failure to raise the question of such a violation denies the appellee the opportunity to establish that tolling of the statute occurred. The proper approach is the filing of a postconviction-relief petition alleging ineffective assistance of counsel. In such a procedure, both the appellant and the appellee could develop the issue of whether tolling occurred.").

{¶16} This notwithstanding, under the application of either standard our resolution of this issue would be the same under the facts presented. It is undisputed by the parties that Sergent was arrested on November 22, 2018, upon the execution of an arrest warrant issued by a Tennessee Court for criminal charges pending in that state. It is not evident from the record at what point, if ever, Sergent's out of state charges were resolved. It is therefore not clear that Sergent was ever held without bail *solely* on the pending charges in the instant case. Therefore, the record does not support Sergent's argument that he was entitled to the triple-count provision under R.C. 2945.71(E).[2] Moreover, because the record demonstrates that

---

[2] *See State v. Goodman*, 3d Dist. Seneca No. 13-05-09, 2006-Ohio-2374, ¶ 10 (finding the triple-count provision inapplicable where the defendant was wanted on a bench warrant from Indiana in conjunction with the underlying charges); *State v. Murray*, 9th Dist. Lorain No. 03CA008330, 2004-Ohio-4966, ¶ 19 (finding

Sergent was brought to trial on the charges pending in this case within the 270 day timeframe under R.C. 2945.71(C)(2), we find no basis to conclude that a violation of Sergent's right to a speedy trial has occurred and we overrule the first assignment of error.

*Second Assignment of Error*

{¶17} In his second assignment of error, Sergent claims that his trial counsel was ineffective for failing to file a motion to discharge on speedy trial grounds prior to the trial. Sergent premises his argument upon the contention that the triple-count provision under R.C. 2945.71(E) applied to the instant case.

*Legal Standard*

{¶18} To prove an allegation of ineffective assistance of counsel, Sergent must satisfy a two-prong test. First, Sergent must establish that his trial counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Second, Sergent must demonstrate that he was prejudiced by counsel's performance. *Strickland*, 466 U.S. at 687. To show that he has been prejudiced by counsel's deficient performance, Sergent must prove that, but for counsel's errors, the result of the trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

---

the defendant was not entitled to the triple-count provision contained in R.C. 2945.71(E) because he also had other pending criminal matters in Pennsylvania involving five arrest warrants and an outstanding parole detainer while being held in jail in lieu of bond on the charges in the underlying matter).

{¶19} The failure to make either the deficiency or prejudice showing defeats a claim of ineffective assistance of counsel. *State v. Frye*, 10th Dist. Franklin Nos. 14AP-988, 14AP-989, ¶ 11, citing *Strickland*, 466 U.S. at 697. Thus, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland* at 697.

{¶20} Given our resolution of the first assignment of error that Sergent failed to establish that the triple-count provision in R.C. 2945.71(E) applied to this case, and the record demonstrating that Sergent was brought to trial for these charges within the 270 day time limit in R.C. 2945.71(C)(2), we find that Sergent has failed to show that his trial counsel's performance fell below an objective standard of reasonable representation in order to constitute ineffective assistance of counsel. Accordingly, we conclude that Sergent has failed to substantiate his ineffective assistance of counsel claim and we overrule the second assignment of error.

*Third Assignment of Error*

{¶21} In his third assignment of error, Sergent argues that his conviction for Assault on a Peace Officer is against the manifest weight of the evidence. Specifically, Sergent claims that the State failed to prove beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to Deputy Walter.

*Standard of Review*

{¶22} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

{¶23} Nevertheless, a reviewing court must allow the trier of fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Controlling Statute*

{¶24} Sergent was convicted of Assault on a Peace Officer, in violation of R.C. 2903.13, which states in pertinent part:

> **(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.**
> **\* \* \***

**(C)(5) If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree.**

R.C. 2903.13(A), (C)(5).

{¶25} R.C. 2901.22(B) states as follows, "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

{¶26} On appeal, Sergent acknowledges that Deputy Walter was in the performance of his officials duties during the physical altercation. However, Sergent disputes the jury's finding that the State proved beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to Deputy Walter. R.C. 2901.01(A)(3) states that " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

*Evidence Adduced at Trial*

{¶27} At trial, the prosecution presented the testimony of Deputy Keegan Walter who testified about his physical struggle with Sergent after Sergent fled from

his home and prior to Sergent's arrest. Deputy Walter recalled chasing Sergent on foot and giving Sergent commands to stop and to get on the ground, which Sergent ignored. Eventually, Sergent became winded and slowed to a stop near a water treatment plant. Deputy Walter repeated his command for Sergent to get on the ground. Sergent continued to refuse to comply. Deputy Walter described what transpired:

> **I then continued trying to circle him to keep him maintained in that area until my back up arrived. And at that same time I was radioing, trying to give him (backup) my location. And then made an attempt to subdue Mr. Sergent. Attempted to serve the warrant. And at that time, he turned and swung at me with closed fist and hit me on the top of head and down the face. And then he backed up into a fighting stance with closed fists. And he continued to back off after that. I continued to give him commands. Numerous commands. Get on the ground. Get on the ground. He was not complying. I started to be able to hear my back or back-up coming. And I felt as Mr. Sergent, Sergent was getting his wind back and I felt if there was another chase that we would not be able to execute the warrant. And so I, he did turn slightly and I went for another attempt. At that time, he also swung at me again, but missed. I ducked under, took him to the ground. At that time, he reached over my back and was yanking up on my gun. And that, in an attempt to, I believe, to protrude from my holster. I then put my left forearm into his face area to push him back and my right hand back at my gun to attempt to stop him from pulling it. And I did numerous times yell he's going for my gun. He's going for my gun. At that time, shortly after, Sergeant Beier arrived, along with Deputy Lawson, and we were able to subdue Mr. Sergent without further incident.**

(Tr. at 116-17).

{¶28} Deputy Walter's testimony was corroborated by the testimony of Deputy Mark Lawson who observed Sergent hit and kick Deputy Walter before he

and Sergeant Beier were able to assist Deputy Walter. Deputy Lawson estimated he was approximately fifteen to twenty feet away when he witnessed Sergent striking Deputy Walter. He recalled that "Deputy Walter still had his hands trying to get Sergent around his waist and his legs, trying to get him to place him on the ground to be under arrest, to get him to the ground to, to subdue him." (Tr. at 106). Deputy Lawson recalled seeing Sergent hit Deputy Walter "five to six times" with a "closed fist." (Id. at 103).

{¶29} Deputy Walter testified about injuries he received as a result of the altercation with Sergent. He explained that he had bruising on his left bicep as well as pain and temporary loss of strength in his shoulder, which required him to take time off of work because he could not lift anything with that arm. Deputy Walter also recalled feeling pain on his forehead, eye, lip, and cheek from where Sergent had struck him with a closed fist. Deputy Lawson further testified to observing bruises on Deputy Walter's face and chin after the incident. He recalled that Deputy Walter showed him "injuries to [Deputy Walter's] left forearm, bicep the next day." (Tr. at 102). Deputy Lawson advised Deputy Walter to take photographs of his injuries. The State submitted a photo of Deputy Walter's bruised bicep as an exhibit, which was admitted for the jury to review.

{¶30} Sergent presented the testimony of his step-son, Peter Maier, who stated that he followed Deputy Walter when the foot pursuit began after Sergent fled from the residence. Peter testified he was also present with Sergent and Deputy

Walter when the chase ended at the water treatment plant. Peter recalled Sergent placing his hands in the air and engaging in a conversation with him. Peter stated that Deputy Walter then ran toward Sergent from behind and tackled Sergent to the ground. Peter stated that Sergent fell to the ground on his left elbow and right hand. Peter described grabbing Sergent's right hand and holding it on his leg. He recalled that Sergent's right hand was bleeding from a cut he had received the day before and that Sergent's blood was on his jeans. Peter stated that at that point Sergent was subdued and willingly handcuffed. Peter testified that he did not observe Sergent punch or strike any part of Deputy Walter's body. Peter also stated that Deputy Walter fell while chasing Sergent and he surmised that the Deputy could have incurred the injuries to his face and arm as a result of the fall.

{¶31} Sergent also testified and acknowledged that he ignored Deputy Walter's commands at the water treatment plant. He explained that he was attempting to talk to Peter when Deputy Walter tackled him from behind. Sergent stated that he gave up resisting shortly after being tackled to the ground and was handcuffed. Sergent denied ever swinging at Deputy Walter or attempting to strike him with his fists.

{¶32} After reviewing the record, weighing inferences, and examining the credibility of the witnesses, we find that Sergent's conviction for Assault on a Peace Officer is not against the manifest weight of the evidence. The trier of fact was presented with two different versions of events, and the jury found the State's

version of events more credible. Stated differently, Sergent's conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony of the prosecution's witnesses. Notably, the jury did not convict Sergent of the Aggravated Robbery offense related to the allegation that Sergent attempted to take Deputy Watler's firearm during the struggle. We find the split verdict in the instant case supports the conclusion that the jury critically weighed the testimony and evidence, accepting some and rejecting others. Thus, we cannot say the jury lost its way in finding Sergent guilty of Assault on a Peace officer. Accordingly, we conclude that Sergent's conviction is not against the manifest weight of the evidence and as such we overrule the third assignment of error.

{¶33} Based on the foregoing, the assignments of error are overruled and the judgment and sentence of the trial court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/hls**