{¶ 1} Defendant-appellant, Dewayne Stewart ("appellant"), appeals the trial court's denial of his motion to suppress. For the reasons set forth below, we reverse the judgment of the trial court, vacate appellant's convictions, and remand for proceedings consistent with this opinion.
 {¶ 2} On November 16, 2005, the Cuyahoga County Grand Jury indicted appellant on three counts: count one alleged trafficking in drugs, in violation of R.C. 2925.03; count two alleged possession of drugs, in violation of R.C. 2925.11; and count three alleged possession of criminal tools, in violation of R.C. 2923.24. Appellant pled not guilty to the indictment.
 {¶ 3} On December 16, 2005, appellant filed a motion to suppress any of appellant's belongings in this case. On January 9, 2006, appellant supplemented this motion and argued that any drugs seized from him or the vehicle in which he was a passenger were unconstitutionally seized and must be suppressed.
 {¶ 4} On February 17, 2006, the trial court held a hearing concerning appellant's motion to suppress, as well as a similar motion to suppress filed by his co-defendant, Arthur Hunter ("co-defendant" or "Hunter"). At the hearing, the following individuals testified: Detective John Pitts, Detective Juan M. Mendoza, appellant and Hunter. Their testimony revealed the following pertinent facts.
 {¶ 5} Detective Pitts testified that on October 5, 2005 around 8:00 p.m. he was conducting surveillance of 1374 West Boulevard in Cleveland, Ohio in response *Page 3 
to numerous complaints of drug activity. He observed a number of individuals outside the location and focused on appellant because Detective Pitts observed appellant remove something from his mouth, count it and place it back in his mouth.
 {¶ 6} As he was watching appellant, Detective Pitts heard a car horn. He turned in the direction of the noise and witnessed a green Ford Ranger stopped in the flow of traffic. The vehicle behind the stopped Ranger sped up and then maneuvered around the stopped vehicle. Detective Pitts noted that this area of West Boulevard is a "no-stopping zone." The driver of the Ford Ranger was the co-defendant.
 {¶ 7} Detective Pitts then observed appellant walk towards the curb and converse with the driver of the vehicle. The vehicle then pulled into a driveway and appellant entered the vehicle. Thereafter, the vehicle backed into the street, drove northbound on West Boulevard, and turned right on Desmond Avenue. Detective Pitts notified officers in the area of the green Ford Ranger and its traffic violation.
 {¶ 8} Detective Mendoza testified that he was informed that a green Ford Ranger had committed a traffic violation and the passenger was the focus of the drug activity investigation. Accordingly, he pursued the vehicle. Upon activating his lights, the passenger, appellant, and the driver, Hunter, both leaned toward the center of the vehicle toward the floorboard. The vehicle then made an abrupt turn into a residential driveway. Detective Mendoza and his partner pulled in behind the Ford Ranger. As Detective Mendoza approached the vehicle, he witnessed *Page 4 
appellant throw an object from the passenger window.
 {¶ 9} Detective Mendoza then instructed appellant to exit the vehicle. As appellant was exiting the vehicle, Mendoza saw, in plain view, a bag of crack cocaine in the middle of the vehicle on the floor board. Immediately thereafter, he conducted a pat down of appellant's person, placed him under arrest, and advised him of his constitutional rights. The detective then retrieved the crack cocaine in the vehicle and went to the object appellant threw from the vehicle. The object was $20. Additionally, Detective Mendoza searched appellant incident to the arrest and discovered $160 and a cell phone. Finally, the detective searched the vehicle and discovered marijuana underneath the passenger seat.
 {¶ 10} Appellant testified that he called the co-defendant, a friend, to pick him up at a his friend's apartment building. As the co-defendant's vehicle, a Ford Ranger, approached, a vehicle carrying a boat in front of the Ford Ranger slowed down the traffic. Appellant then proceeded from the building towards the vehicle and entered the vehicle. The vehicle proceeded down the road towards the highway. During travel, police stopped the vehicle.
 {¶ 11} Appellant testified that he did not make any furtive movements after the police lights came on. He admits that he may, however, have dropped a blunt of marijuana on the floor of the vehicle. Appellant also testified that at the time of the stop, he had money in his pocket and a phone, lighter, blunt and $20 in his lap. He explained that he was going to pay the co-defendant the $20 for the ride. *Page 5 
 {¶ 12} The co-defendant, Arthur Hunter, testified that he knew appellant prior to this incident and confirmed that he was giving appellant a ride. As to the stop of the vehicle, Hunter testified that he saw the police lights, immediately pulled over, and exited from the vehicle before the police exited their vehicle. The officers emerged from the vehicle, pointed their guns at Hunter, and directed him to put his hands on the vehicle. He complied with their request.
 {¶ 13} After hearing the aforementioned testimony, the trial court denied appellant's and Hunter's motions to suppress. The court determined that the detectives had reasonable suspicion to stop the vehicle.
 {¶ 14} On March 22, 2006, appellant withdrew his former plea of not guilty and entered a plea of no contest. The court advised appellant of all his constitutional rights and penalties, and upon the evidence proffered, found appellant guilty of all charges in the indictment. Thereafter, on April 27, 2006, the court sentenced appellant to two years community control sanctions.
 {¶ 15} Appellant now appeals the denial of his motion to suppress and asserts one assignment of error for our review. Appellant's sole assignment of error states:
 {¶ 16} "The trial court erred in denying appellant's motion to suppress the evidence in this case as it was obtained in violation of his state and federal constitutional right to be free of unreasonable searches and seizures."
 {¶ 17} With regard to procedure, we note that this court set forth the standard of review for a trial court's denial of a motion to suppress inState v. Curry (1994), *Page 6 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, which states:
 {¶ 18} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973),34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906."
 {¶ 19} In the instant matter, the trial court denied appellant's motion to suppress, finding that the detectives had reasonable suspicion to stop the Ford Ranger. For the following reasons, we find the trial court erred in denying appellant's motion.
 {¶ 20} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v. United States (1967),389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. It is applicable to the states via the Fourteenth Amendment. Mapp v. Ohio (1961), 367 U.S. 643,650, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v. California (1963),374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726, and by Section 14, Article I, of the Ohio Constitution which is virtually identical to theFourth Amendment. See *Page 7 State v. Pierce (1998), 125 Ohio App.3d 592, 596, 709 N.E.2d 203.
 {¶ 21} A common exception to the Fourth Amendment warrant requirement is an investigative stop, or Terry stop. Terry v. Ohio (1968),392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868. Under Terry, a law enforcement officer may briefly stop and detain an individual for investigative purposes, even without probable cause to act, if he has a reasonable suspicion that "criminal activity may be afoot." Id. at 30; accord United Statesv. Sokolow (1989), 490 U.S. 1, 7, 104 L.Ed.2d 1, 109 S.Ct. 1581. To justify his suspicion as reasonable, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."Terry, supra at 21.
 {¶ 22} A court, evaluating the validity of a Terry search, must consider "the totality of the circumstances-the whole picture."United States v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690,66 L.Ed.2d 621. The circumstances are also to be viewed objectively: "Would the facts available to the officer at the moment of the seizure or search `warrant a man of reasonable caution in the belief that the action taken was appropriate?" Terry, supra at 21-22. In other words, the court must view the circumstances surrounding the stop "through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." State v. Andrews (1991),57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271.
 {¶ 23} We find that, under the circumstances, the detectives did not have the requisite reasonable suspicion to stop the Ford Ranger. In so finding, we rely on this *Page 8 
court's decision in State v. Delagraza (2001), 144 Ohio App.3d 474,760 N.E.2d 860. In that case, the officers stopped a vehicle based upon a hunch that the occupants and another individual, Allan Harris, were engaging in a drug transaction. Id. at 476. Prior to the stop, the officers observed Harris on three separate occasions, in an area known for drug activity, stop driving motorists, approach their vehicles, speak with them, conduct some sort of transaction, and then walk away. Id. After the third vehicle pulled away, the officers observed a van, in which the defendant was an occupant, park at the curb near Harris. Id. Harris approached the vehicle and began talking. The officers, believing Harris was engaged in another drug transaction, pulled their police vehicle in front of the van. Id. They then witnessed the occupants of the vehicle bend over, put their hands down and move them around. Id. As a result, the police effectuated a stop of the vehicle and Harris. Id.
 {¶ 24} In Delagraza, supra, this court, considering the aforementioned factual findings, determined that the trial court did not err in granting the defendant's motion to suppress. Id. at 479. In so finding, the court noted that the officers never observed Harris with any drugs, did not see him supply any motorists with drugs, did not witness any motorists hand Harris money, and observed no exchange between Harris and the defendant. Id. Accordingly, the court determined the officers lack reasonable suspicion of drug activity to effectuate the stop of the van. Id.
 {¶ 25} In the instant matter, the detectives can point to even less suspicious facts that warrant a stop of the Ford Ranger than those provided in Delagraza, *Page 9 
supra. Prior to Detective Mendoza effectuating the stop of the vehicle by turning on his lights, Detective Pitts only observed appellant standing outside an apartment area known for drug activity take something from his mouth, count it, and return it to his mouth. Additionally, Detective Pitts only witnessed appellant approach the Ford Ranger, speak with the driver, and enter the vehicle. Detective Pitts did not see appellant stop any other vehicles prior to the Ford Ranger, nor did Detective Pitts see appellant perform any transactions with any other drivers in the area. Furthermore, as in Delagraza, supra, Detective Pitts did not observe appellant with any drugs or see any exchange between appellant and the driver of the Ford Ranger. Considering the totality of the circumstances, we find the trial court erred in determining the detectives had reasonable suspicion to stop the Ford Ranger.
 {¶ 26} In addition to arguing the detectives had reasonable suspicion of drug activity in order to effectuate the stop of the Ford Ranger, the state, for the first time, argues in their appellate brief that the detectives had probable cause to effectuate the stop because the Ford Ranger committed the traffic violation of impeding the flow of traffic. Appellant, however, maintains that the truck did not impede the flow of traffic. Instead, the vehicle in front of the Ford Ranger impeded the flow of traffic. In denying appellant's motion to suppress, the trial court only made the factual determinations necessary for rendering its decision as to reasonable suspicion and did not make any factual determinations or judge credibility as to the traffic stop, which appellant contested. Therefore, we cannot address the state's argument that *Page 10 
the detectives had probable cause to make a traffic stop because an appellate court is not a fact-finding court, and thus, is limited by the findings of the trial court contained in the record. State v.Kasarda (1992), 82 Ohio App.3d 388, 391, 612 N.E.2d 484; see, also,State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 ("In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility.").
 {¶ 27} Accordingly, the motion to suppress should have been granted and the evidence resulting from the stop suppressed. Therefore, we reverse the trial court's denial of appellant's motion to suppress, vacate appellant's convictions as they derived from the improper stop, and remand to the trial court for further proceedings pursuant to the law and consistent with this opinion. See Wong Sun v. United States
(1963), 371 U.S. 471, 488, 9 L.Ed.2d 441, 83 S.Ct. 407 (the exclusionary rule mandates suppression of evidence which is subsequently discovered and derivative of an unlawful invasion); State v. Gonzales,151 Ohio App.3d 160, 180, 2002-Ohio-4937, 783 N.E.2d 903 (reversing conviction on appeal and remanding to the trial court because the trial court must proceed from the point where the error occurred.)
Judgment reversed, convictions vacated and cause remanded.
It is ordered that appellant recover from appellee his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, P.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1